### SPANGLER v. BOLINGER

[No. 27,213.    Filed  October  23,  1939.]

*George C. Uhlir,* and *John Marshall,* for appellant.
*Don P. Strode,* for appellee.

FANSLER, C. J.—The appellant began this proceeding supplemental to execution, seeking to reach income, salary, and wages due the defendant. There was a judgment for the defendant, from which the appellant appeals. If chapter 296 of the Acts of 1937 (Acts 1937, p. 1348) is unconstitutional, the judgment is correct; otherwise it must be reversed.

The act in question is an amended exemption law. By its provisions, resident householders of the state are permitted to hold, free from liability for levy or sale on execution upon a judgment for debt founded upon a contract:

"(a) Real estate, or estates or rights therein or thereto of the value of not more than seven hundred dollars.

"(b) Tangible personal property to the value of six hundred dollars.

"(c) Intangible personal property, including choses in action, profits, debts owing, and income owing, to the value of fifteen dollars.

"(d) Income or profits of whatever nature of not more than fifteen dollars per week. If such income and profits shall exceed the sum of fifteen dollars per week, then ninety per centum of such income and profits in excess of said sum of fifteen dollars per week shall be exempt and ten per centum thereof shall be subject to execution, provided, however, that none of the foregoing provisions of this act shall apply to any judgment obtained prior to July 1, 1937.

"In no event shall the total of all exempted property exclusive of income or profits under the provisions of this act exceed in value the sum of one thousand dollars."

Section 22 of article 1 of the Constitution of Indiana is as follows: "The privilege of the debtor to enjoy the necessary comforts of life shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale for the payment of any debt or liability hereafter contracted: * * *." Section 23 of article 1 is as follows: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens." The last clause of the Fourteenth Amendment to the Federal Constitution provides: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

We are advised by appellee that it was because of conflict with one or both of these latter constitutional

provisions that the law was held unconstitutional below. It is urged that the statute has subdivided householders into four classes, depending upon the type or character of the property which they own, and that it has granted to householders owning nothing but real estate a $700 exemption; to those owning nothing but tangible personal property a $600 exemption; to those who own only intangibles a $15 exemption; and that the fourth-class consists of householders whose property is made up of income alone; that there is no natural or substantial difference between these classes, and that one is just as deserving as the other, and that the act unjustly, unequally, and arbitrarily discriminates between them, and that therefore it is unconstitutional.

If the Legislature enacted a general exemption law, exempting a certain amount of money from execution, and then arbitrarily provided that some householders should have advantage of the exemption and some should not, it would be an unlawful and unconstitutional discrimination. *Martin* v. *Loula, et al.* (1935), 208 Ind. 346, 194 N. E. 178, 195 N. E. 881. But the statute here in question provides for the exemption of several kinds of specific property, each in a fixed amount, the exemption being available to any and every householder within the state upon equal terms.

The present Constitution was adopted in 1851. At that time there was an exemption law upon the books exempting property of householders of the value of $125. Prior to that enactment the exemption had always been in terms of specific property. To illustrate: The statute of 1843 exempted "the necessary wearing apparel of such person and his family; the family bible, and school books used by or in the family; one cow and calf, six sheep and the wool thereof, two beds and the necessary bedding therefor, household and

kitchen furniture, not to exceed in value fifteen dollars, one chopping axe, one plough, one weeding hoe, one loom, one spinning wheel, one reel, and the necessary provisions to supply the family for two months; and also the arms and accoutrements required by law to be kept by such person for military duty, or with which he shall have furnished himself as the member of any military company," not exceeding, however, $100 in value. Revised Statutes of Indiana 1843, ch. 40, §§ 376, 377, p. 743. Up to the time of the Constitutional Convention there had never been an express exemption of real estate, although a bill had been introduced in the Legislature to exempt homesteads of a certain value, and homesteads had been exempted in a number of other states. In the Constitutional Convention, when the exemption provision was under consideration, a self-executing amendment was offered, providing for the exemption of homesteads of the value of $500. This amendment was defeated. The debates disclose that the members of the Convention believed that the Legislature had full power to provide for exemptions without any constitutional authority, and that it would have power to exempt homesteads or other specific property; that the provision adopted was merely a declaration of approval of the principle involved; that it granted no power which the Legislature would not have without it; that it was not a limitation upon the legislative power to exempt specific property; and that, even though the amendment exempting homesteads was defeated, the Legislature still had power to exempt homesteads or other specific property. See Constitutional Debates.

Under the statute here considered every householder may hold real estate of the value of $700, tangible personal property of the value of $600, intangible per-

sonal property of the value of $15, and income and profits amounting to $15 per week, and 90 per cent of any excess thereof, or a total of $1,000 free from execution. It is said in American Jurisprudence, Vol. 12, § 493, p. 173: "A form of classification which is generally upheld, although it depends to a large extent on value and amount, is that which recognizes the validity of exemption statutes. These may be of various kinds, and the courts of the country abound in decisions which uphold statutes exempting property from execution and attachment, such as the homestead of the debtor, the books and library of the professional man, the surgical implements of the physician, or the household furniture, horses, cows, and other articles belonging to ordinary debtors." It was said by the Supreme Court of Ohio in *Williams* v. *Donough* (1902), 65 Ohio St. 499, 503, 504, 63 N. E. 84, 85, 56 L. R. A. 766, 768: "Generally, if not universally, legislation of this character is based upon the ground of an enlightened public policy, as tending to preserve the family home, thus fostering the family relation, and in that way promoting the general welfare. This is done by exempting within reasonable limits, the homestead of the head of a family, and, in a similar way, certain articles of personal property necessary to the use and enjoyment of such homestead; and even, in some instances, money in a limited amount, arising from the sale of property, where there is no homestead. As stated before, these privileges are accorded, not as matter of favor to the individual; not for the benefit of the impecunious only, but apply to all alike who are of the classes and in the situation included, and are justified by considerations of the general good. So, in some instances, are the tools of workmen exempt; this on the ground that to take away his

implements of labor is to take away his capacity to maintain himself and those dependent upon him, and thus tend to make them a burden upon society."

If a statute which exempts implements of labor does not confer a special privilege upon a householder who owns such implements, not enjoyed by the householder who does not own them; if a statute which exempts only a homestead is not invalid as discriminating against one who owns no homestead, but owns other property of the same value, it must follow that a statute which grants a householder an exemption of $700 of real estate, or $600 of tangible personal property, is not illegally discriminatory because it only grants an exemption of intangible property of the value of $15.

Under all of the authorities that have come to our attention, the character and amount of property to be exempted is within the reasonable discretion of the Legislature. Anciently, specific property seems to have been chosen for exemption; and the exempting of property generally, of a given value, is a modern innovation. Money and intangibles as such were not the subject of exemption under statutes exempting specific property. The history of legislation on the subject indicates therefore that the omission of intangibles from the items of property selected for exemption has not been thought unreasonable. On the contrary, Legislatures appear to have believed that the exemption of such property was not necessary to accomplish the purpose of such laws. Nor has our attention been called to a single case in which the courts have found such an omission to be unreasonable or arbitrary. It might be argued that a team of horses and a wagon might be more important and useful to a family than a homestead, especially if that family had the horses and wagon and had no homestead, and there might be

much difference of opinion upon the subject. But where there is room for a reasonable difference of opinion, discretion to select and determine the question is in the Legislature, and the courts will not disturb its determination. The remedy, if the law is unjust, is an appeal to the Legislature.

In view of our conclusion, we hold that the statute is constitutional.

Judgment reversed, with instructions that such further proceedings be had as are not inconsistent herewith.

Tremain, J., dissents.